WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Abrahamson,<br><br>              Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>              Defendant. | No. CV-13-00703-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Heidi Abrahamson, which challenges the Social Security Administration's decision to deny benefits. (Doc. 12.) For the reasons set forth below, the Court affirms that decision.

**BACKGROUND**

Abrahamson applied for disability insurance benefits over sixteen years ago on November 12, 1997. (R. at 98.) She returns to this Court for a third time following three rounds of denial at the Social Security Administration ("SSA") and two reversals and remands from this Court. (R. at 709–10.) The bases for the SSA's denials and this Court's reversals in the previous two iterations of this case provide essential background information. In those first two iterations, Abrahamson alleged an ongoing claim of disability with an onset date of September 1, 1995. (Doc. 15 1:24–2:2.)

The SSA approved Abrahamson's claim for supplemental security income but denied her claim for disability insurance benefits upon initial and reconsideration review. (R. at 632.) An Administrative Law Judge ("ALJ") held a hearing and heard testimony

from: Abrahamson; Ryan Abrahamson, her husband; Edward Jasiniski, Ph.D., a medical expert; and Louise Chastain, her neighbor. (R. at 27–68.) In evaluating whether Abrahamson was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 20–26.) The ALJ denied the claim at the first step, finding that Abrahamson continued to participate in substantial gainful activity through the time that her insured status expired. (*Id.*) Abrahamson's insured status ended on June 30, 1997.[2] (*Id.*)

The ALJ found that Abrahamson worked as an apartment manager and received free rent, valued at $700, along with bonuses of $100 per apartment rented. (*Id.*) This amount exceeded the $500 per month earnings threshold in place at the time at which employment was presumed to be substantial gainful activity. (*Id.*) The ALJ considered but rejected Abrahamson's argument that her employment was performed under special

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income).  Under the test:
> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] The ALJs and this court have previously considered and rejected Abrahamson's challenge to that date and she does not raise it as an issue in this appeal.

- 2 -

conditions. (*Id.*) The appeals counsel denied review, and Abrahamson appealed to this Court. (R. at 8–10.)

This Court reversed and remanded. *Abrahamson v. Barnhart*, No. CV 03-2199-PHX-EHC, Doc. 58 (D. Ariz. Sept. 29, 2006). It held that the ALJ erred by accepting the presumption of substantial gainful activity based on the income level without determining whether that presumption was rebutted by the special conditions under which Abrahamson performed her work. *Id.* at 4–5. Specifically, the Court held that "[t]he record reflects that Plaintiff worked under special conditions. *See* 20 C.F.R. § 404.1573(c). The ALJ failed to address this proposition. The Court will remand this matter to the Commissioner to consider the testimony of Graff, Chastain and others with respect to special circumstances under which Plaintiff worked." *Id.* at 5.

Upon remand, a new ALJ held another hearing on March 13, 2007 at which Abrahamson and vocational expert George Bluth, Ph.D., testified. (R. at 666–96.) That ALJ again denied the claim at the first step because he found that Abrahamson continued to participate in substantial gainful activity until after her insured status expired. (R. at 632–37.) That ALJ again determined that the work Abrahamson performed was not done under special conditions. (*Id.*) The appeals counsel affirmed and Abrahamson returned to this Court.

This Court again reversed and remanded, holding that the ALJ violated the "law of the case" by conducting a "renewed 'special conditions' analysis." *Abrahamson v. Astrue*, CV-07-1650-PHX-JAT, 2009 WL 806622, at *2 (D. Ariz. Mar. 26, 2009). This Court held that because it had already determined that Abrahamson worked under special conditions, the ALJ could not reach the opposite conclusion. *Id.* The Court noted that it had remanded on the previous occasion and was doing so again because "there are outstanding issues that must be resolved before a determination of disability can be made." *Id.* Quoting from 20 C.F.R. § 404.1573(c), this Court noted that "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." *Id.* The Court concluded that the ALJ "failed to

- 3 -

consider the effect of the special conditions on whether Plaintiff has the necessary skills and ability to work at the substantial gainful activity level." *Id.* at *3.

The case returned again to the SSA where a third ALJ held a hearing in September 2011. (R. at 853–93.) Abrahamson and vocational expert John J. Komar, Ph.D. testified at the hearing. (*Id.*) During this hearing, Abrahamson changed her alleged onset date of disability from September 1, 1995 to April 23, 1997. (*Id.*) The new later onset date is just over two months before her insured status expired on June 30, 1997. Abrahamson also changed her claim to a closed period ending on December 31, 2006. (*Id.*) During the hearing there were disagreements between Abrahamson's attorney and the ALJ. (*Id.*) The ALJ elicited testimony from Abrahamson and the vocational expert, but Abrahamson's attorney challenged the ALJ on several grounds. (*Id.*) At one point the attorney suggested that the ALJ should recuse himself because the attorney felt that the ALJ was not following this Court's orders. (*Id.* at 886–87.)

The third ALJ again found that Abrahamson's job as an apartment manager constituted substantial gainful activity under the regulations. (R. at 706–24.) The ALJ emphasized that the presumptive threshold of $500 per month had been exceeded but also considered the testimony and evidence that this Court previously held should be considered "special conditions" under the regulations. (*Id.*) The ALJ's made a determination at the first step as the other two ALJ's decisions had.[3]

In the alternative, the ALJ went on to hold that even if the work were not substantial gainful activity, a denial of benefits was still appropriate. (*Id.*) The ALJ found that Abrahamson had several severe impairments under step two. (R. at 715.) Under step three, the ALJ held that none of those impairments individually or in combination equaled a listed impairment. (R. at 715–16.) The ALJ then determined that Abrahamson

---

[3] The ALJ had indicated at the hearing that he would be deciding under the fourth step. (R. at 887.) This was perhaps influenced by the attorney's insistence that this Court's previous rulings had resolved step one in Abrahamson's favor. Nevertheless, it is clear from the ALJ's Decision that he made a determination at step one before making a determination on alternative grounds at step four.

- 4 -

had a residual functional capacity ("RFC")[4] that allowed for light work with some restrictions. (R. at 716–22.) Finally, the ALJ determined that with the RFC, Abrahamson was capable of performing her past relevant work as an apartment manager and display manager. (R. at 722–23.)

Abrahamson now appeals the latest ALJ's determination before this Court.

## DISCUSSION

### I. STANDARD OF REVIEW

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

The claimant carries the initial burden of proving a disability in steps one through four of the analysis. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

---

[4] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

- 5 -

## II. ANALYSIS

### A. Previous Rulings

It is first necessary to clearly understand this Court's prior directives before it can be determined whether the third ALJ followed them. In the first iteration, this Court held that Abrahamson did perform her apartment manager duties under special conditions. It did not hold that those special conditions precluded a finding that the work still qualified as substantial gainful activity, it only held that the ALJ should consider the special conditions and not solely the amount of money earned. As this Court restated in the second case, the reversible error was the ALJ's "failure to discuss whether those special conditions precluded a finding that Plaintiff engaged in SGA." *Abrahamson*, CV-07-1650-PHX-JAT, 2009 WL 806622, at *1.

This Court's second reversal also did not determine whether Abrahamson was engaged in substantial gainful activity, only that the ALJ erred when it determined that Abrahamson did not work under special conditions despite this Court's earlier ruling to the contrary. This Court noted that under the C.F.R. rules, even "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 404.1573(c). It remanded so that the ALJ could "consider the effect of the special conditions on whether Plaintiff has the necessary skills and ability to work at the substantial gainful activity level."

This Court did comment that "[t]he mere fact that she engaged in SGA under special conditions is not dispositive of whether Plaintiff is in fact disabled." *Id.* This is best read as dicta supporting the need to remand because there were still outstanding issues. If this Court had in fact held that Abrahamson engaged in substantial gainful activity that would have been dispositive even if it were under special conditions. That would mean that the special conditions, though existent, were not sufficient to prevent her employment from being a substantial gainful activity. That is also precisely what the ALJ found upon remand: that despite the existence of special conditions, Abrahamson was still engaged in substantial gainful activity when her insured status ended.

Abrahamson's attorney mistakenly believed and asserted at the hearing that this Court had held that Abrahamson had not engaged in substantial gainful activity (R. at 856, 868–69) when it in fact only held that she had performed her work under some special conditions.

### A.   Substantial Gainful Activity

For purposes of Social Security benefits, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The first step in evaluating a disability claim requires an ALJ to determine whether a claimant was engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of other factors including the existence of a medical condition. 20 C.F.R. § 404.1520(b).

"Substantial gainful activity means work that— (a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Statutory guidelines establish a presumption of substantial gainful activity if the claimant earns over the amount specified in the guidelines. *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). However, earnings exceeding the presumptive level are not dispositive. *Id.* The claimant may rebut a presumption based on earnings with evidence that the claimant was unable "to perform the job well, without special assistance, or for only brief periods of time." *Id.* (citing *Anderson v. Heckler*, 726 F.2d 455, 456 (8th Cir.1984)); *see also* 20 C.F.R. § 404.1573.

The Code of Federal Regulations provides that such special conditions include, but are not limited to, situations in which a claimant was: (1) required and received special assistance from other employees in performing her work; (2) allowed to work irregular hours or take frequent rest periods; (3) provided with special equipment or was assigned work especially suited to her impairment; (4) able to work only because of specially arranged circumstances, for example, other persons helped her prepare for or get to and

from work; (5) permitted to work at a lower standard of productivity or efficiency than other employees; or (6) given the opportunity to work despite the impairment because of family relationship, past association with an employer, or her employer's concern for her welfare. 20 C.F.R. § 404.1573(c).

As in the previous iterations of this case, the ALJ held that Abrahamson was engaged in substantial gainful activity when her insured status expired. The issue before this Court is again whether that determination was unsupported by substantial evidence or based on legal error. The ALJ's alternative basis for denial, that Abrahamson does not qualify for disability even if her work could be considered substantial gainful activity, only needs to be addressed if the ALJ was in error in finding substantial gainful activity despite special conditions. It is not disputed that Abrahamson's job managing the apartments is presumptively substantial gainful activity because there is no doubt that she made enough money to create that presumption. The only issue is whether the ALJ made an error in holding that Abrahamson failed to rebut that presumption by establishing sufficient special conditions. Abrahamson bears the burden of proving disability at step one, which means that she had to establish the sufficiency of the special conditions during the relevant time period.

In the first iteration of this case, this Court reviewed the evidence Abrahamson presented and held that the ALJ's determination that there were no special conditions was not supported by substantial evidence. This Court further found that it was legal error to accept the presumption of substantial gainful activity based on earnings without considering whether that presumption was rebutted by those special conditions of employment. In the second case, this Court found that its previous order had been ignored when the ALJ again found no special conditions. This Court again remanded for the ALJ to accept this Court's determination that there were at least some special conditions that needed to be considered as part of the proper legal test to see if the presumption of substantial gainful activity was rebutted.

Here, the ALJ acknowledged and considered the special conditions even if he was

1 not particularly impressed with their extent or significance. The existence of special
2 conditions may, but does not necessarily, rebut the presumption of substantial gainful
3 activity based on earnings. The ALJ accepted this Court's finding that there were special
4 conditions but determined that in this case they did not rebut the presumption that
5 Abrahamson's work was substantial gainful activity. Accordingly, this Court will not set
6 aside the ALJ's decision based on legal error because the ALJ followed the law and this
7 Court's previous orders by considering whether the special conditions rebutted the
8 presumption of substantial gainful activity.

9 The other possible avenue for setting aside and ALJ's decision is if it is
10 unsupported by substantial evidence. Here, the Court finds that the ALJ's determination
11 was based on far more than a scintilla of evidence and that a reasonable person could
12 accept the evidence as supporting the conclusion that Abrahamson was engaged in
13 substantial gainful activity despite the special conditions.

14 There is certainly conflicting testimony and documentary evidence in this case
15 regarding Abrahamson's responsibilities and special conditions as an apartment manager.
16 That evidence is subject to more than one rational interpretation, and this Court defers to
17 the ALJ's conclusion because it is the ALJ's responsibility to determine credibility and
18 resolve ambiguities. This Court cannot substitute its judgment for the ALJ's where the
19 evidence can support either outcome. Although Abrahamson emphasizes the parts of the
20 record that support her allegations, there is no indication that ALJ failed to consider the
21 record as a whole in reaching his conclusion.

22 The ALJ discussed how the evidence shows special conditions in terms of
23 allowing Abrahamson to work flexible hours and answer phone calls from home or even
24 from bed. It is not clear how much this was based on the part-time, unscheduled, nature
25 of the job and how much it was provided especially for Abrahamson based on her
26 impairments. Abrahamson had no set hours and most of her work involved talking on the
27 phone. There is evidence that the owner of the complex had hoped Abrahamson would
28 also be able to do some maintenance but that she could not do this and so others were

1  used. However, the ALJ was free to determine that the apartment manager position
2  involved substantial gainful activity even if it did not involve physical labor. The ALJ
3  noted that part-time work can be considered substantial gainful activity. Even if
4  Abrahamson was not able to do everything her employer initially planned, that does not
5  mean that what she did do was not substantial. Abrahamson did not meet her burden to
6  show how any of these special conditions took the job out of the realm of substantial
7  gainful activity.

8  Assuming that these accommodations were as extensive as Abrahamson argued, it
9  is unclear when these special conditions began. Abrahamson alleges that she got worse
10 over time and was not under a severe impairment until two months before her insured
11 status ended. She did not establish at what point in time the special conditions should
12 have been considered sufficient to rebut the presumption of substantial gainful activity
13 based on the level of income. The ALJ noted that Abrahamson's position continued for
14 three years from August 1995 to July 1998. The ALJ emphasized that it did not end until
15 one year after her insured status expired. The ALJ noted that Abrahamson was never
16 fired or let go. In fact the evidence is that she quit when she moved from the apartment
17 complex into a home.

18 Her supervisor indicated that he was not paying her anything different than what
19 he would have paid anyone else. There was no familial relationship to indicate that she
20 was not earning the income she received. The ALJ reviewed how the number of
21 apartment complexes and apartments she was managing actually increased over the years.
22 By Abrahamson's own account, it was only in October 1997, after her insured status had
23 expired, that another employee was hired to help with her duties. (R. at 155.)

24 It was also in that same period after her insured status had ended that she had to
25 stop working for a month or two, but the ALJ notes that she returned to work after that
26 and continued to work at the apartment until she moved. Even assuming that this return to
27 work was in a different or diminished capacity, that only shows that her responsibilities
28 diminished then, and not at some earlier point before her insured status ended. The ALJ

1   also noted that Abrahamson was working three days a week in a family store during this
2   same time period in addition to her apartment manager position. (R. at 721)

3   The employer filled out a form in June 1998, was interviewed the next month in July 1998, and provided a written statement in May 2000. (R. 178–79, 181, 204–05.) These reports describe varying levels of accommodation but were all written well after Abrahamson's insured status expired. (*Id.*) They do not clearly establish when the special conditions began. (*Id.*) The last employer statement, submitted by Abrahamson on the day of her first hearing, describes the special conditions more severely than the previous reports. (R. at 204–05.) That statement goes so far as to allege that in the summer of 1996 another employee was hired and Abrahamson "was not able to assist me anymore." (*Id.*) Although Abrahamson argues that the ALJ should have given such statements more credit, these statements are contradicted by the employer's earlier statements that Abrahamson work was worth the money paid and that she performed as expected and satisfactorily. (R. 178–79, 181.) The ALJ noted that Abrahamson herself was inconsistent and changed the dates on which she claimed she was no longer able to work. (R. at 720.)

The only date of some significance that occurred before the end of the insured status was April 23, 1997. At Abrahamson's first hearing before an ALJ, a non-treating state doctor offered opinion testimony that as of April 23, 1997, Abrahamson met or equaled the severity of a listed impairment for purposes of step three. It was based on this testimony that Abrahamson chose to amend her alleged onset date of her disability. However, even assuming that this was the day at which her physical and mental impairment became sufficiently severe to qualify under the later steps of the analysis, it does not establish that she stopped or significantly curtailed her work activities at that point. If she continued to perform the same work after this date that she performed before, the substantial or gainful nature of that activity would not change. In fact she complained to the doctor that day about the stress of taking care of three apartment complexes. (R. at 405.) That implies both that she was continuing to perform substantial work and that any special conditions she was working under did not remove those

responsibilities or stress from her. As discussed above, the only specific dates on which Abrahamson showed that her duties may have been reduced or stopped were all later in 1997 or 1998 after her insured status ended. Other than that, Abrahamson offered only general testimony from herself and others that things became gradually more difficult over the years and specifically during the course of 1997.

Given all of this conflicting testimony and evidence, the ALJ's determination is supported by substantial evidence. The ALJ followed this Court's orders by considering this evidence of special conditions and their significance.

The ALJ also did not err in giving important weight to the level of income. Income above the threshold amount creates a presumption that there is substantial gainful activity. This Court did not and cannot change the important role that the level of income plays in creating a presumptive outcome for this case. Special conditions may, but do not necessarily, defeat that presumption. This Court finds that the ALJ's decision to deny benefits at step one was supported by substantial evidence and was not based on a legal error.

Although the parties have also presented arguments about the remaining steps of the determination process, the Court does not address those arguments here. The ALJ did not err in finding that Abrahamson failed to establish a disability at step one. The ALJ's alternate findings at the later steps need not be addressed because Abrahamson cannot be considered disabled for purposes of the statute as she was still performing substantial gainful activity when her insured status ended. This remains true even if she had severe medical impairments that made it very difficult for her to perform that work.

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED.**

/ / /

/ / /

/ / /

/ / /

1 **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action.

Dated this 11th day of August, 2014.

_/s/ A. Murray Snow_
G. Murray Snow
United States District Judge